WILLIAM C. PLUNKETT & another *vs.* THE METHODIST EPISCOPAL SOCIETY IN NORTH ADAMS & others.

The trustees of the Methodist Episcopal Society, in N. A., in consideration of $450, paid by S. B. B. on the 1st of September, 1843, gave him a bond, conditioned for the conveyance of a piece of land to him, on demand : This contract was entered into, on the part of B., under an expectation that the Universalist Society would have the lot, whenever they should raise funds and pay for the same, and that when paid for the trustees should make a deed thereof directly to the Universalist Society : Subsequently, a subscription was set on foot by the Universalist Society to raise funds for building a meeting-house on the premises ; and B. subscribed $500 thereto, $450 in the land, and $50 in money ; but the subscription paper was afterwards lost, and no subscriber was called upon to pay his subscription ; and nothing further was ever done towards building a meeting-house on the land, or making any other use of it : A bill in equity having been brought by the assignees in insolvency of B., for a specific performance of the condition of the bond, and the above facts appearing, it was held, that this court have power to decree the specific performance of a bond with a penalty, conditioned for the conveyance of land ; and that, without deciding upon the validity and effect of the subscription, the engagement thereby created in favor of the Universalist Society was in its nature provisional, dependent upon the amount subscribed by others, and upon the completion of the subscription, and the building of the house within a reasonable time ; and that the undertaking had ceased to be of any legal or honorary obligation, by reason of the lapse of time. the

failure to raise the money, and the abandonment, for an indefinite period, of the contemplated project; and, consequently, that the plaintiffs were entitled to a decree in their favor.

METCALF, J. This is a bill in equity, brought by the assignees of the estate of Stephen B. Brown, an insolvent debtor, to obtain a decree for the performance, by the trustees of the Methodist Episcopal Society in North Adams, of a contract made by them with Brown.

The bill alleges that, on the 1st of September, 1843, the trustees gave Brown a bond, conditioned to convey to him, on demand, a certain messuage and parcel of land, to be held by him, his heirs and assigns, as an indefeasible estate of inheritance, clear of all incumbrances; that said Brown's estate was assigned to the plaintiffs, under the insolvent law, in June, 1846; that he died in March, 1847; and that the plaintiffs in September, 1848, requested said trustees to convey the messuage and land to them, and prepared and presented to the trustees a deed for that purpose, which they refused to execute.

The answer of the trustees of the society admits that they made the bond, in consideration of $450, paid by Brown, and accepted by them, and that they were requested by the plaintiffs to execute a deed to them, as alleged in the bill. But they aver, that they were informed by Henry Arnold, who acted as their agent in the negotiation with Brown, that when the bond was executed, Brown said he was not purchasing the real estate for himself, but for the Universalist Society in Adams; that before the plaintiffs requested the trustees to convey the estate to them, the Universalist Society gave the trustees notice that they (the Universalist Society) claimed Brown's interest in the bond, and presented it to the trustees, and requested them to convey the estate to the society.

The answer of the Universalist Society alleges that Brown, when he took the bond from the trustees of the Methodist Episcopal Society, and until his death, was a member of the Universalist Society; and that, according to their

best knowledge, information and belief, he entered into the transaction, spoken of in the plaintiffs' bill, solely for the Universalist Society, without any motive of private interest, and with a view to a donation to said society ; that he never had any thing to do with the estate, as his individual property, otherwise than to devote it entirely to the benefit of the society ; that the society have been in possession of the same, without rent, from the date of the bond to the time of Brown's decease ; that he intended the premises as a donation, when he took the bond, and ever after : That Brown made a gift of the premises to the society in writing, in the form of a subscription for the purpose of building meeting-house for them, he being, at the time of such subscription, able to pay all his debts : That the premises consisted of an old meeting-house and a lot of ground suitable for a meeting-house ; that Brown and the society were desirous of having a new meeting-house, and accordingly Brown made the donation, in the manner before stated : That the subscription paper was lost, but that about $2000 were subscribed upon it, besides Brown's subscription : That "no time was stated, when the building of the meeting-house should be commenced or completed : " That the Universalist Society have, ever since the making of the bond, kept the premises in repair ; that after the subscription was made, the Universalist Society, upon the faith of the subscription, made contracts for all the timber for the new meeting-house, and that the project of building it had never been abandoned ; that the time of building it had only been delayed, and delayed for causes unforeseen at the time, such as losses, and failures of members of the society, from whom much aid was expected ; and that the society "still hope and believe, that with the subscriptions already obtained, they shall ere long have the pleasure of being able to erect a meeting-house, such as they and said Brown anticipated." The Universalist Society admit that they are in possession of the bond, but aver that they did not receive it from Brown, nor by any formal assignment thereof to them. But they

claim the interest therein, and the benefit thereof, under the foregoing alleged facts, upon the principles of equity, and insist that they are entitled to a conveyance of the real estate from the trustees of the Methodist Episcopal Society.

- The parties have filed several depositions in the case, and have agreed upon a statement of facts, taken chiefly from those depositions, and have submitted the matter to the decision of the court, upon such of those facts as the court shall deem competent to be admitted in evidence ; the plaintiffs contending, however, that some of those facts cannot legally be taken into consideration, but that "the bond," in the language of their counsel, "must be its own interpreter."

The facts of the case are substantially these : Stephen B. Brown told the agent of the Methodist Episcopal Society that he expected the Universalist Society would have the lot, but that they had not raised the money to pay for it, and that he would take a bond in his own name, and when they paid for the lot, the Methodist Society might make a deed directly to the Universalist Society ; that he expected they would have it, but that he should retain it in his own hands, until paid for : That the bond was executed, at the time, and on the condition mentioned in the bill, upon the payment of $450 by Brown : That the Universalist Society defrayed all its expenses by voluntary subscription ; that the society occupied the premises in question from the date of the bond till the death of Brown, who never claimed rent, in any way; and that, whenever any money was raised by the society, to defray its expenses, Brown always assisted as to funds.

From these facts, it is certain that Brown did not ostensibly buy the land for the purpose of giving it to the Universalist Society, but for the purpose of retaining it in his own hands, until it should be paid for.

The further facts are, that a paper was afterwards circulated, in which the subscribers thereto agreed to give the sums severally set against their names, towards the erection of a meeting-house, to be occupied by the Universalist Society of North Adams. Brown subscribed "$500, $450 of which to

be paid in the old Methodist house lot, and fifty dollars in money;" and others subscribed about $2000. The subscription paper was lost, and no subscriber was ever called upon to pay his subscription. Individual subscribers delivered lumber towards their subscriptions; but this lumber was afterwards sold, because the plan of building a meeting-house had been given up for the present. Nothing has since been done towards building a meeting-house, and nothing has been done on the land, preparatory to placing any other building upon it, since the Methodist Society left possession of it; and "said house and lot have not been since changed in any material respect, except that by neglect and want of care it has decayed."

It appears from the depositions, that Jenette Brown, of Illinois, received the bond for safe keeping (but she declined to state from whom she received it) for the benefit of the heirs of said Brown; that she kept it a few weeks, and then delivered it to William James, her father; but that she never received any thing for it; that James received the bond from his daughter in the winter or spring of 1848; that he received it for safe keeping, as he thought it might be beneficial to his daughter, as one of Brown's heirs; that he sent it from Illinois to Ezra D. Whitaker, of Adams, by mail, that Whitaker might ascertain whether it would be of any benefit to his (James's) daughter as one of Brown's heirs; that Whitaker received it with instructions to deliver it to the Universalist Society, on their paying the sum mentioned therein ($450) with the interest, provided he was satisfied that Jenette Brown was one of Brown's heirs, and had a claim to the proceeds of the bond; otherwise, to do with it as he thought proper; and that he gave it to Stephen M. Whipple, and received $10 for it from him.

These last facts, showing from whose hands the bond was last received, are of no further importance, than that they show that it was never put into the possession of the Universalist Society by Brown, the obligee, and that it was in Illinois more than a year after Brown's decease.

Upon examining this evidence, we have not found it necessary to decide upon the legal admissibility of that part of it to which the plaintiffs have objected, because we are of opinion that they are entitled to the decree they seek for, even if that evidence were unobjectionable. In other words, we are of opinion, that the evidence, on which the defendants rely, does not make out a defence to the bill.

Without deciding or inquiring about the validity and binding force of such a subscription as Brown made towards the building of a meeting-house, either upon the ground of its consideration, or its being within the statute of frauds, or the law against fraudulent conveyances, we are all of opinion that as it was in its nature a provisional undertaking, dependent upon the amount subscribed by others, and upon the filling of that subscription, and the building of the house within a reasonable time, the undertaking has ceased to be of any legal or honorary obligation, by reason of the lapse of time, the failure to raise the money, and the abandonment, for an indefinite time at least, of the contemplated project.

It was objected by the defendants' counsel, that the bond is not a contract in writing to convey real estate; that the condition neither sets forth an agreement to give a deed of the estate mentioned, nor recites any agreement whatever, but merely is, that if the obligors shall convey, when requested, the bond shall be void ; and therefore that the court have no jurisdiction of the case ; that the plaintiffs have an adequate remedy at law, and that the form of the bond shows that Brown relied on its penalty only, if the obligors should refuse to convey the land. All these objections are answered by the decision in *Ensign* v. *Kellogg*, 4 Pick. 1, made twenty-three years ago, in this county, after a full argument.

The plaintiffs, as assignees of Brown, under the insolvent law, and successors to his rights, are entitled to a decree against the obligors in the bond, directing them to convey the land in question, as prayed for in the bill.

*H. L. Dawes*, for the plaintiffs.

*T. Robinson*, for the defendants.